IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **NISSAN MOTOR ACCEPTANCE CORPORATION,**<br><br>        Plaintiff,<br><br>        v.<br><br>**PRESTIGE IMPORTS OF THOMASVILLE, INC., d/b/a Prestige Honda of Thomasville; PRESTIGE MOTORCAR GALLERY, INC., d/b/a Prestige Infiniti, and MICHAEL CRAIG HORNSBY,**<br><br>        Defendants. | Civil Action No. 7:10-cv-129 (HL) |

## ORDER

Before the Court is Plaintiff Nissan Motor Acceptance Corporation's ("NMAC") Motion for Summary Judgment (Doc. 34). For the reasons stated more fully below, the Motion is granted in part and denied in part.

## I.  FACTUAL BACKGROUND

This case revolves around the business failure and bankruptcy of Defendants Prestige Imports of Thomasville, Inc., d/b/a Prestige Honda of Thomasville ("Prestige Honda") and Prestige Motorcar Gallery, Inc., d/b/a Prestige Infiniti ("Prestige Infiniti"). These car dealerships entered into loan agreements with Plaintiff Nissan Motor Acceptance Corporation ("NMAC"), and later defaulted on their payment obligations under the agreements. These defaults are the subject of this litigation and are discussed below.

a. **Prestige Honda Floorplan**

On March 8, 2007, Defendant Prestige Honda entered into an Automotive Wholesale Financing and Security Agreement with NMAC (the "Prestige Honda Floorplan"). (Doc. 41, Defendant Hornsby's Statement of Material Disputed Facts and Responses to Plaintiffs' Statement ("SMF") ¶ 1.[1]) Under this agreement, NMAC advanced funds to Prestige Honda for the purchase of vehicle inventory. (SMF ¶ 1.) Defendant Michael Craig Hornsby ("Hornsby") executed the Prestige Honda Floorplan on behalf of Prestige Honda. (SMF ¶ 2.) The agreement provided that Prestige Honda would pay NMAC upon the disposition of any vehicles that had been financed by NMAC and held as inventory. (SMF ¶ 3.) The agreement also stated that all advances given by NMAC would be payable to NMAC on demand, along with interest and charges. (SMF ¶ 4.) Additionally, Prestige Honda agreed to pay all costs and expenses of NMAC if there was a default. (SMF ¶ 5.)

Prestige Honda defaulted on its payment obligation to NMAC under the Prestige Honda Floorplan by failing to make payments when due. (SMF ¶ 6.) Prestige Honda also violated the Floorplan by selling vehicles and not remitting payment in accordance with the terms of the agreement. (SMF ¶ 7.) Following the default, NMAC made several demands on Defendants for payment of the

---

[1] All citations to Defendant's Response to Plaintiff's Statement of Material Facts (Doc. 41) refer to statements that have been admitted by Defendant Hornsby and are not in dispute.

outstanding balance, but Defendants have yet to pay the sums owed. (SMF ¶ 10.)

### b. **The Cap Loan**

On March 20, 2007, NMAC and Defendant Prestige Honda entered into a Dealer Capital Loan and Security Agreement (the "Cap Loan"). Under this agreement, Prestige Honda promise to repay NMAC the principal sum of $1,800,000, with interest. (SMF ¶ 12.) Prestige Honda defaulted on its payment obligations to NMAC under the Cap Loan, failing to repay NMAC in accordance with the stated terms of the agreement. (SMF ¶ 16.) The balance of the Cap Loan was accelerated, and NMAC has made several demands on Defendant Prestige Honda to repay the outstanding principal, along with the interest and charges, but Defendant Prestige Honda has failed to make any payments. (SMF ¶16.)

### c. **The Prestige Infiniti Floorplan**

On July 2, 2003, Defendant Prestige Infiniti entered into an Automotive Wholesale Financing and Security Agreement with NMAC (the "Prestige Infiniti Floorplan"). (SMF ¶ 18.) Defendant Hornsby executed the Prestige Infiniti Floorplan on behalf of Prestige Infiniti. (SMF ¶19.) The terms of the Prestige Infiniti Floorplan were similar to those included in the Prestige Honda Floorplan. The agreement provided that upon the disposition of any of the vehicles financed and held as inventory, Prestige Infiniti was obligated to pay NMAC the amount

due relevant to the item sold. (SMF ¶ 20.[2]) Prestige Infiniti also agreed to pay all advances on demand, (SMF ¶ 21), and agreed that if there was a default, Prestige Infiniti would be responsible for all costs and expenses incurred as a result of the default (SMF ¶ 22).

Prestige Infiniti defaulted on its obligations to NMAC under the terms of the Floorplan by failing to make payments on time. (SMF ¶ 23.) Additionally, Prestige Infiniti sold vehicles and failed to pay NMAC in accordance with the payment plan under the Floorplan. (SMF ¶ 24.) Pursuant to these breaches of the agreement, NMAC suspended all financing to Prestige Infiniti and accelerated the outstanding balance of the Floorplan. (SMF ¶ 25.)  NMAC has made several demands on Defendants for payment of the outstanding balance, but have yet to receive any payment. (SMF ¶ 27.)

> d. **The Prestige Infiniti Lease Agreement**

On September 18, 1997, NMAC and Prestige Infiniti entered into an Infiniti Loan Car Program Lease Agreement (the "Prestige Infiniti Lease Agreement"). According to the terms of this agreement, Prestige Infiniti was able to lease certain automobiles from NMAC on a sporadic basis. (SMF ¶ 29.) Defendant Hornsby executed the Lease Agreement on behalf of Prestige Infiniti. (SMF ¶ 30.) The Lease Agreement contained a clause that stated that a default would occur if Prestige Infiniti failed to pay when any monthly lease payment was due

---

[2] Statement 20 actually refers to the Prestige Honda Floorplan, as opposed to the Prestige Infiniti Floorplan. However, the Court assumes that this is typographical error and the parties intended to refer to Prestige Infiniti, not Prestige Honda.

and the failure to pay continued for a period of ten days. (SMF ¶ 31.) Prestige Infiniti failed to make lease payments in a timely fashion, and thus, Prestige Infiniti defaulted under the Lease Agreement. (SMF ¶ 32.) Based on the terms of the Agreement, NMAC repossessed six leased cars from Prestige Infiniti. (SMF ¶ 33.) NMAC disposed of the cars that were repossessed from Prestige Infiniti and applied the proceeds towards the outstanding balance. (SMF ¶ 34.)

Defendants Prestige Honda and Prestige Infiniti filed for Chapter Eleven bankruptcy in January 2010 and the case is currently stayed as to those two defendants. (Doc. 13.) However, the case against Defendant Hornsby has moved forward, leading to this Motion for Summary Judgment which is analyzed below.

## II. **STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most

favorable to the nonmoving party. Id. at 354-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this framework, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. **ANALYSIS**

In Defendant Hornsby's Response to the Plaintiff's Motion for Summary Judgment (Doc. 40), he does not dispute the issue of his personal liability under

6

the facts of this case. Defendant Hornsby has admitted that he personally guaranteed the indebtedness of Prestige Infiniti (SMF ¶ 42) and Prestige Honda (SMF ¶ 46). He executed a personal guaranty as to both dealerships that read

> [Hornsby] hereby unconditionally and irrevocably guarantees to [NMAC] … the full and prompt performance and payment of all present and future liabilities of [Prestige Infiniti] to [NMAC] irrespective of their nature or the time the arise … The liabilities covered by this Guaranty … include all obligations and liabilities of [Prestige Infiniti] … including without limitation … any and all damages, losses, costs, interest, charges, attorneys' fees and expenses of every kind, nature and description suffered or incurred by [NMAC], arising in any manner out of or in any way connected with, or growing out of, said liabilities.

(SMF ¶¶ 44, 47.) Defendant Hornsby has also guaranteed the indebtedness of Prestige Honda and Prestige Infiniti in a Cross-Guaranty, Cross-Collateral, and Cross-Default Agreement dated March 8, 2007. (SMF ¶ 48.) That agreement states that Defendant Hornsby gives the guaranties contained therein to induce NMAC to make loans to Prestige Honda. (SMF ¶ 50.)

While Defendant Hornsby makes no argument as to his liability, he does argue that "[w]hile the fact of liability may not be in dispute, the amount due remains at issue." (Doc. 40, p. 2.) In essence, Defendant Hornsby's argument is that the amount of damages that Hornsby owes NMAC cannot be determined at this time, making summary judgment inappropriate. As Defendants Prestige Honda and Prestige Infiniti move through the bankruptcy process, their assets are being liquidated and monies from the liquidation process are being paid to NMAC on a rolling basis. NMAC has already received payments from

Defendants Prestige Honda and Prestige Infiniti (Doc. 40, p. 4) and, pursuant to the Plan of Liquidation, NMAC will continue to receive additional payments from the Bankruptcy Trustee (Doc. 40, p. 6). Thus, Defendant Hornsby argues that the amount of damages that Defendant Hornsby owes to NMAC is uncertain, which precludes summary judgment. The Court agrees that the amount of damages is still unclear. However, the Court finds that the issue of liability can be decided on summary judgment.

To prevail on a breach of contract claim, a plaintiff must show "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Duke Galish, LLC v. Manton, 308 Ga. App. 316, 321, 707 S.E.2d 555, 559 (Ga. App. 2011) (citing Kuritzky v. Emory Univ., 294 Ga. App. 370, 371, 669 S.E.2d 179 (2008)). In this case, Plaintiff NMAC has established the three required elements by demonstrating through uncontested assertions of fact that Defendant Hornsby breached the agreements, causing damages to NMAC. Based on the evidence that NMAC presented showing that Defendant Hornsby is personally liable for the debts of the Defendants Prestige Honda and Prestige Infiniti, the Court finds the most appropriate action at this point is to grant the Motion for Summary Judgment as to the issue of liability, but deny the Motion as it relates to damages. The issue of damages will be reserved for resolution at a later time. See Schimmel v. Slaughter, 975 F. Supp. 1357, 1364 (M.D. Ga. 1997) (granting summary judgment on defendant's liability, but denying motion for summary judgment as to damages); Whitney Bank v. Marr,

8

11-00534-CB-M, 2012 WL 827055 at *3 (S.D. Ala. Mar. 12, 2012) (granting summary judgment on the issue of liability, but reserving the issue of damages for resolution at a later date).

The Court finds the Plaintiff's Amendments to the Motion for Summary Judgment (Docs. 45, 46) do not need to be addressed at this time. Both of the Amendments relate to the issue of damages. As the Court has reserved this issue for consideration after the completion of Defendants Prestige Honda and Prestige Infiniti's bankruptcy proceedings, the facts submitted to the Court in the Amendments are not of consequence for purposes of the Court's decision today. Plaintiff is encouraged to resubmit the information when the issue of damages is at issue with the Court.

IV. **CONCLUSION**

Plaintiff's Motion for Summary Judgment (Doc. 34) is granted as to the issue of Defendant Hornsby's liability, but denied as to the issue of damages. The parties are ordered to notify the Court within one week of Defendants Prestige Honda and Prestige Infiniti's completion of the bankruptcy process. At that point, the Court will reset deadlines for dispositive motions on the issue of damages.

**SO ORDERED**, this 19th day of June, 2012.

> *s/ Hugh Lawson*
> HUGH LAWSON, SENIOR JUDGE

ebr